# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Leonard F. Joy
Executive Director and
Attorney-in-Chief

Southern District of New York
John J. Byrnes
Attorney-in-Charge

September 25, 2006

**By Hand**

Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re:     United States v. Vito Forestier**
**05 Cr. 1280(KMK)**

Your Honor:

We respectfully submit in support of our client's motion to suppress physical evidence and postarrest statements.

An evidentiary hearing was held on three separate days, June 6, July 5 and August 23, 2006. The transcripts for each of these days starts with page 1 rather than the second day resuming pagination where the first day left off and the third day picking up where the second day's pagination ended. Accordingly, this submission will refer to testimony given June 6 as "Tr. 1", July 5 as "Tr. 2" and August 23 as "Tr. 3".

The defendant and the government are filing simultaneously and will argue orally October 13, 2006. Accordingly, it is expected and requested that, on that day, each party be permitted to supplement its written submission and address some of the points made by the other side in its written submission. Additionally, because of the inherent difficulty of reviewing in writing over 400 pages of testimony and setting forth in that manner the internal and external inconsistencies of some of the police witnesses, we will, here, review some of them only and propose to do so more completely at oral argument October 13, 2006.

The court authorized the parties to submit in letter form. (Tr. 3 at 136).

## Preliminary Statement

Mr. Forestier was arrested November 6, 2005, and has been indicted on charges that he possessed heroin with intent to distribute and possessed a firearm in connection with a drug trafficking offense. He has moved to suppress the physical evidence seized from him and his car

Honorable Kenneth M. Karas                          September 25, 2006
United States District Judge                         Page 2
Southern District of New York

Re:   **United States v. Vito Forestier**
      **05 Cr. 1280(KMK)**

on the ground that the police lacked probable cause to arrest him, such that the physical evidence
was seized in violation of his constitutional rights as a result of which his postarrest statements
are "fruits of the poisonous tree" and should be suppressed on that basis and further on the
ground that these statements were coerced and  not properly "Mirandized".

    The gist of the testimony given by two New York City police officers, Officer White and
Sergeant Kivlehan, is that on the evening of November 6, 2005, at about 7:15 p.m. when it was
already dark, the defendant was driving erratically south on Valentine Avenue and came to a stop
alongside a fire hydrant at its intersection with 180ᵗʰ St., that the police car driven by the Sergeant
and in which Officer White was in the right front passenger seat and Officer Carpenter in the
back seat pulled up alongside the defendant's car, that Mr. Forestier was asked some questions
by the police from their own car, that the police approached the defendant's driver's window to
ask for his license and registration and observed a "baggy" probably or apparently containing a
narcotic substance in a recess of the driver's  left armrest, following which he was ordered out of
his car and arrested.  The government argues that the police were authorized to block the
defendant's car based on his erratic driving and had probable cause to arrest him when they saw
the baggy.

    Mr. Forestier submitted an affidavit in support of his motion and testified that there was
no baggy in his armrest or any other contraband in plain view of the police before they arrested
and searched him, that he had purchased about 40 baggies of the heroin in the vicinity of the

Honorable Kenneth M. Karas                                    September 25, 2006
United States District Judge                                  Page 3
Southern District of New York

**Re:    United States v. Vito Forestier**
       **05 Cr. 1280(KMK)**

Grand Concourse and 183rd St a few minutes before he was arrested, that he had hidden his

purchase underneath his underwear and it between the cheeks of his derriere because he feared a

police search and wanted to conceal his narcotics involvement from his "common law wife"

Yvonne Lavayen who was seated in the right front passenger of the car and their five-year-old

daughter was in the backseat.

Mr. Forestier further contends that he was not driving erratically but that the police had

been following him since the Grand Concourse, stopped, arrested and searched him and his car

because the police had received a tip that a bald or shaven-head "Vito" was driving a black or

dark Acura or Honda, with a woman and child aboard, was about to purchase drugs in the

vicinity of the grand Concourse and 183rd Street and was probably in possession of a firearm. He

argues that the police invented the erratic driving and "baggy in armrest" scenario to justify his

arrest and search, in keeping with the long-standing police culture of "tailored testimony" to

defeat motions to suppress, previously briefed by us by a letter of June 16, 2006, and its

enclosure which we incorporate herein by reference . Mr. Forestier. Further argues that the

evidence shows that he was not properly "Mirandized" and that he was coerced into giving a

written statement before his "common-law wife" and child were released from several hours'

custody.

### ARGUMENT

The burden of showing probable cause or reasonable suspicion is on the government.

Honorable Kenneth M. Karas                                  September 25, 2006
United States District Judge                                Page 4
Southern District of New York

**Re:**    **United States v. Vito Forestier**
           **05 Cr. 1280(KMK)**

*United States v. Porter,* 701 F.2d 1158 (6th Cir. 1980), *United States v. Allen,* 629 F.2d 51 (D.C.

Cir. 1980). The government's burden of proof to show probable cause is by a high quantum of

evidence pointing to probable guilt.

> "The quantum of evidence required to establish probable cause to
> arrest need not reach the level of evidence necessary to support
> conviction, [citation omitted] but it must constitute more than rumor,
> suspicion, or even a 'strong reason to suspect". (emphasis added).
> *United States v. Fisher,* 702 F.2d 372, 375 (2d Cir. 1982), citing
> *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310
> (1949).

The objective articulable facts necessary to give rise to probable cause to arrest must exist

as the particular person sought to arrested.

> "Where the standard is probable cause, a search or seizure of a person
> must be supported by probable cause particularized with respect to
> that person. This requirement cannot be undercut or avoided by
> simply pointing to the fact that . . . there exists probable cause to . .
> . seized another . . ." (emphasis added. *Ybarra v. Illinois,* 444 U.S.
> 85, 90, 100 S.Ct. 338, 341 (1979).

Here, therefore, to prevail, the government must show by the above standard that the police

saw a baggy visibly containing a white powder in a recess of the defendant's left front armrest. If

the government has failed to meet that burden, suppression of all the physical evidence found on the

defendant and in the car he was driving must be granted and of any postarrest statement he may have

made, should be suppressed as well as "fruit of the poisonous tree" whether Mirandized or not.

*Wong Sun v. United States,* 371 U.S. 471, 83 S. Ct. 407 (1963).

Honorable Kenneth M. Karas
United States District Judge
Southern District of New York

September 25, 2006
Page 5

**Re:    United States v. Vito Forestier**
       **05 Cr. 1280(KMK)**

The well-known antipathy of the police for the exclusionary rules (see our June 16, 2006, letter and its enclosure, both of which are incorporated herein by reference) amply illustrate the "tailored testimony" or "testalying" police cultural phenomenon, recognized even by Robert J. McGuire, Esq., former New York City Police Commissioner and assistant United States Attorney Southern District of New York.

The defendant does not urge the court to reject officer White's and Sergeant Kilvehan's testimony about seeing a baggy in the armrest based solely on the "tailored testimony" police culture, but does ask the court to take that culture into account when assessing the credibility of these two witnesses on whose testimony the government's burden rests entirely. We argue that this culture sheds light on a possible reason why these two policemen testified as they did because the improbability of their testimony is evident internally and is all the more so evident when examined together with other evidence in this case and with common sense.

It is suggested here, that in the evening of November 6, 2005, Lieutenent McMahon learned once again from his informant that Vito was once again coming to the vicinity of the grand Concourse and 183rd St. driving a black or dark Honda or Acura to obtain heroin for personal use and for distribution in Staten Island; that he had a firearm, was light-skinned, was bald or had a shaved head, had a woman and child in his car. The defendant testified before the government provided the "informant tip" discovery and evidence, that a few minutes before his arrest at Valentine Avenue and

Honorable Kenneth M. Karas                    September 25, 2006
United States District Judge                  Page 6
Southern District of New York

Re:    **United States v. Vito Forestier**
       **05 Cr. 1280(KMK)**

180th St. he had purchased 40 bags of heroin on the grand Concourse and 183rd streets or thereabouts,

and he had concealed the fruits of that purchase beneath his underwear and indeed, between the

"cheeks" of his derriere.

It is unthinkable that the defendant who had a firearm and a substantial amount of heroin

which he had carefully concealed inside his person to keep his "common-law wife" in the dark and

to elude a successful police search, would then drive down Valentine Avenue in the manner

described by the Sergeant; making a dead stop between two blocks, thereby blocking traffic on a

street which had only one lane for moving cars in each direction and then swerving to his right and

back online. Such maneuvers would clearly be likely to attract police attention. The defendant had

been prudent enough to hide his heroin; he could not have been so stupid as to drive in that manner;

a driving technique which was bound to attract the attention any police who saw it.

Had the baggy been in the left armrest, that place was likely to be hidden by the defendants

left elbow. This would be naturally so in any event and the defendant would certainly have taken

care to conceal the baggy by simply placing his elbow on top of the only natural place for it, without

attracting police suspicion.

Officer White testified that the Sergeant had not told him that the sergeant and his two-

passenger detail were on a mission to find the car and the man mentioned by the Lieutenent to the

Sergeant. Here, not only is it unthinkable that the Sergeant would not have told his car companions

what they were looking for, but the Sergeant explicitly testified that he imparted all his Lieutenent-

Honorable Kenneth M. Karas
United States District Judge
Southern District of New York

September 25, 2006
Page 7

Re:    **United States v. Vito Forestier**
       **05 Cr. 1280(KMK)**

derived information to his car mates (Tr.3 at 41). It stands to reason that since six eyes are better than two, the Sergeant who was the driver of the car and therefore had to pay attention to traffic and pedestrians would have alerted his teammates to be on the lookout for a car and occupants whose descriptions the lieutenant had given him.

It is clear that the November 6 telephone call from the informant to the lieutenant informed the latter that Vito was on his way to the Grand Concourse and 183rd St to purchase drugs but that he had not yet gotten the drugs. In that connection, the defendant testified that he made a telephone call to his drug source who then met him and made the delivery. The defendant also testified that as soon as the police ordered him out of his car, he was asked "where is the drugs?" (Tr. 1 at 114). This question does not flow naturally from the alleged sighting of one baggy in an armrest but it is strongly suggestive of the police' knowledge or suspicion that the defendant had picked up and concealed a large quantity of drugs somewhere on his person or in his car.

Officer White's credibility is also suspicious for a variety of other reasons, not the least because he falsely denied having heard anything about looking for a car and its driver. He was the only eyewitness to the events being debriefed the next day by the government. Yet, he denied having said a number of things to the prosecutor, blandly claiming that someone else who had no personal knowledge had misheard or misunderstood him.(Tr. 1 at 40).

The government orginally called officer White, intending that he be its only witness at the

Honorable Kenneth M. Karas
United States District Judge
Southern District of New York

September 25, 2006
Page 8

Re:    **United States v. Vito Forestier**
       **05 Cr. 1280(KMK)**

suppression hearing. Officer White proved to be less than a very compelling witness. Two
additional witnesses were called after the defendant had put in his case, to complete the record on
the <u>Miranda</u> issue raised by the court and also because of the "informant tip" issue which arose
after the government had rested the first day of the hearing. It is reasonable to infer that the Sergeant,
called on the third day of this hearing had never, before the hearing began, told the government that
he had seen a baggy in the armrest. The record is clear that this Sergeant never made any business
entry or record reflecting such an important sighting. Had the Sergeant made a timely record and
told the government that he had seen a baggy, it is reasonable to infer that the government would
have called him on the first day of the hearing. Instead, he was called after the government had first
rested on June 6. He never told the government about such a sighting until after the Officer White
had already testified and only in the context of his preparation to testify about the Miranda and the
"informant tip". Since no "3500 material" was produced reflecting the sergeant's debriefing in
preparation for his testimony, he could of course not be impeached with such possibly inconsistent
prior account to the relevant events. He was therefore free to corroborate officer White's testimony
that a baggy was in the armrest without concern that he might be impeached.

However, that testimony runs afoul of officer White's testimony in at least two respects.
Officer White testified that he had ordered the defendant out of his car (Tr.1 at 17) and the Sergeant
testified that it is he who did so. (Tr.3 at 11, 58 and 60 )

The Lieutenent had given the Sergeant all the necessary information he had for the sergeant

Honorable Kenneth M. Karas                                    September 25, 2006
United States District Judge                                   Page 9
Southern District of New York

**Re:    United States v. Vito Forestier**
         **05 Cr. 1280(KMK)**

and his team to go looking for the car. This information included the probable make of the car, the fact that it's a driver was a light-skinned man with a bald or shaven head, that his name was Vito and that he was going to be looking for drugs in the vicinity of the hundred and 83rd St and Grand Concourse and also that he had women and young child aboard and further that he probably had a firearm.

The Sergeant imparted all this disinformation to his two car mates. He testified that before anyone in his car got out of it, he drew abreast of the defendant's car which had stopped at Valentine Avenue and 180th Street, leaned over and spoke to the defendant through the police car's right front window and the defendant's open driver's window, asking him for his pedigree. The defendant answered with and no doubt gave his true first name, Vito. That information together with everything else in the three policemen could observe, clearly established that the Lieutenent was now speaking with the man he had been sent to find and who was probably in possession of drugs and a firearm. In these circumstances, the three policemen had a powerful interest in detaining the defendant and searching him. And that is where and when it became useful to invent a baggy in the armrest.

It is more than likely that, since the informant had alerted Lieutenant McMahon before the suspect had actually obtained the drugs, the police became crucially interested in where and from whom the suspect would get the drugs. This interest, of course, was sure to be advanced and satisfied by going to the indicated intersection promptly and start observations there. Since the

Honorable Kenneth M. Karas                                  September 25, 2006
United States District Judge                                Page 10
Southern District of New York

Re:    **United States v. Vito Forestier**
       **05 Cr. 1280(KMK)**

defendant acquired the drugs in a bodega at or near the very intersection indicated by the informant,

the police located the defendant in that vicinity and, as the defendant testified, the police followed

him a few blocks to the scene of his arrest.


**Erratic driving**. At the hearing, officer White and the Sergeant each testified that the defendant had

been driving erratically and that this had been the reason they stopped and questioned him. The the

complaint nor 3501-S (officer White's debriefing notes) make any mention of such erratic driving.

Complaint seems to attribute the defendants stop and questioning solely to the fact that his windows

were dark tinted and that he had stopped at a fire hydrant. Thus, the alleged basis for the stop and

questioning why the police has changed. This inconsistency in the police account of why the

defendant came to their attention suggests that neither of these reasons is the true one, but rather that

the police were following the defendant along as he testified and as makes perfect sense in this

scenario.

        If as demonstrated above, the police are less than truthful about their reason for approaching

the defendant, their credibility must be much in doubt about the baggy two of them claimed they

saw.

        The defendant's testimony is entirely credible. On the first day of the hearing, June 5, 2006,

before the court compelled the reluctant to government to disclose the informants tip information,

Mr. Forestier testified that he had driven to the Grand Concourse a two blocks away from his arrest,

Honorable Kenneth M. Karas                          September 25, 2006
United States District Judge                        Page 11
Southern District of New York

Re:   **United States v. Vito Forestier**
      **05 Cr. 1280(KMK)**

that he had telephoned his drug source who had then met him, that he had purchased about 40 index

of the heroin, had made a right turn east off the Grand Concourse and a right turn once again on the

Valentine Avenue to a three blocks north of 180th streets and that the police car which finally drew

abreast of him had been following him since the Grand Concourse.

**Refuting erratic driving claim.**

1. 3501S (Exh. A), governments debriefing notes of officer White makes no mention of

erratic driving. Only stated basis for police approach of defendant: "pulled over at hydrant, noticed

window dark tinted."

2. Sworn complaint prepared November 7, 2005, within hours of the events, and prepared

in the presence of officer White, the only eyewitness to the events (Tr. 1 at 38-42) similarly does

not mention erratic driving. Only stated basis for police approach of defendant: "noticed a vehicle

with dark tinted windows pull over quickly and come to a stop in front of a fire hydrant" (Exh. B

at 2a).

3. Officer White and the Sergeant differ in their accounts of the defendant' driving on

Valentine Avenue. The Sergeant has the defendant making a dead stop in the middle of the roadway,

officer White says no such thing.

4. The defendant denies driving erratically and common sense suggests that in these

circumstances, he would have been the most prudent to not do so.

Honorable Kenneth M. Karas                          September 25, 2006
United States District Judge                        Page 12
Southern District of New York

Re:    **United States v. Vito Forestier**
       **05 Cr. 1280(KMK)**

Police car following

The police began following the defendant's car on the east side of the Grand Concourse, made a right turn behind in on a side street, going east and then another right turn, still following the defendant, heading south on Valentine Avenue, to the site of his arrest at the intersection of 180th Street. (Tr.1 at 98-101).

Confidential Informants Tip

Although two officers at the scene of the stop, Sergeant Kivlehan and Officer White, both testified that Mr. Forestier's erratic driving was the reason for their approach of his vehicle and only upon examining the car were drugs discovered, a detailed reading of the factual record indicates that their testimony is not credible. In fact, the record shows that the officers had specific information implicating Mr. Forestier in a drug transaction and the allegation of erratic driving is almost certainly a pretext to cover up the officers' lack of probable cause to search Mr. Forestier's car and person.

The police was fervently eager to find "Vito" and act upon the information had received from the informant. Indeed, Lieutenant McMahon testified that he himself had twice before November 6 gone looking in vain for Vito. (Tr. 3 at 115).

The police are understandably reluctant to admit that they would ever search anyone illegally. Therefore we have a scenario in which both the Lieutenant and the Sergeant gave truly bizarre testimony when pressed about what it had been their intention to do in the event they

Honorable Kenneth M. Karas                          September 25, 2006
United States District Judge                        Page 13
Southern District of New York

**Re:    United States v. Vito Forestier**
        **05 Cr. 1280(KMK)**

located in the suspect car and driver. The Sergeant went so far as to testify that he was hoping to

see the suspect engage in a street drug transaction, failing which he would follow him to the limit

of his precinct. The lieutenant's testimony about his intentions was no more logical than the

sergeant's. Since demeanor is one of the factors to be considered by a factfinder, we invite the

Court to recall the linguistic gymnastics of these two witnesses when asked about their

intentions.

    August 23, 2006, Lieutenant McMahon testified that he had received very specific

information regarding Mr. Forestier from a confidential informant, and had communicated that

information to the arresting officers. Lieutenant McMahon testified that in October, his

informant had told him that a man named "Vito" visited the Bronx frequently and often carried a

gun (Tr. 3 at 74). A few weeks later, the same informant told Lieutenant McMahon that Vito had

a shaved head, light skin, drove a small dark Acura or Honda, and carried a gun. (Tr. 3 at 75).

During the evening of November 6, 2005, 20 or 30 minutes before Mr. Forestier's arrest, the

same confidential informant called Lieutenant McMahon again and told him that Vito was in the

vicinity of Grand Concourse in the Bronx for the purpose of purchasing narcotics, was

accompanied by a woman and child, and was again carrying a gun (Tr. 3 at 76-78). According to

Lieutenant McMahon's testimony, he immediately called Sergeant Kivlehan, who was on patrol,

and relayed the informant's information. *Id.* Twenty to thirty minutes later, Sergeant Kivlehan

contacted Lieutenant McMahon telling him that he had arrested someone who he thought was the

Honorable Kenneth M. Karas                          September 25, 2006
United States District Judge                        Page 14
Southern District of New York

**Re:    United States v. Vito Forestier**
         **05 Cr. 1280(KMK)**

subject Lieutenant McMahon had phoned him about. *Id.*

Sergeant Kivlehan's testimony at the August 23 hearing is largely consistent with
Lieutenant McMahon's. Sergeant Kivlehan testified that on November 6, 2006, Lieutenant
McMahon "gave [him] a description of a male that was going to be in the vicinity of 183 in the
Grand Concourse, possibly armed with a firearm and there to purchase drugs gave [Kivlehan] a
description of the kind of car that he was in and the passengers he would be with." (Tr. 3 at 5).
Sergeant Kivlehan was told that the man would be driving a dark colored sedan, had a female
and child passengers, and that the information came from a particular confidential informant. (Tr.
3 at 6). He told the other officers in the car what the lieutenant told him and they then proceeded
to 183rd and Grand Concourse to begin patrolling. (Tr. 3 at 7). It was then that Sergeant
Kivlehan claims he spotted Mr. Forestier's car driving erratically on Valentine Avenue and that
the defendant's car made a dead stop in the middle of the roadway, then swerved to the right and
to the left again. Sergeant Kivlehan claims that it was "sheer coincidence" that the erratic driver
happened to be the exact same man he had been sent to apprehend 20 minutes before. (Tr. 3 at
57).

Officer White made no mention of the informant's tip or the description of Mr. Forestier
when he originally testified on June 6, 2005. At the second hearing, after the government had
provided belated and very sketchy discovery relating to the tip, Officer White contradicted the
testified that he had not been told that the NYPD had received information that he and the other

Honorable Kenneth M. Karas                    September 25, 2006
United States District Judge                  Page 15
Southern District of New York

Re:    **United States v. Vito Forestier**
       **05 Cr. 1280(KMK)**

occupants of the police car were to canvass the area and locate a car and occupants fitting

specific descriptions. Officer White stated that he recalled "something that night about a black

car," but nothing else. (Tr. 2 at 17). He had no specific memory about where he heard about the

black car (Tr. 2 at 19) and was sure he never heard the name Vito before approaching the

defendant. (Tr. 2 at 21). At the time he gave the testimony, Officer White did not know that

additional "informant tip" discovery was going to be provided to the defense. Accordingly he

felt free to boldly deny that he knew anything about a dark car which his team had been

instructed to find because its driver probably had drugs and a firearm.

    Sergeant Kivlehan, however, testified categorically that all the descriptive information he

had received from Lieutenant McMahon had been conveyed to his two car mates, including

Officer White.

    The improbability of Sergeant Kivlehan and Officer White's account of coming across

Mr. Forestier driving recklessly and with drugs in plain view just half an hour after they had been

specifically sent to apprehend a man with a matching car, matching physical appearance,

matching passengers and possessing narcotics stretches credibility. Although Sergeant Kivlehan

claims this is "sheer coincidence," given Officer White's conflicting account of events, it is more

likely that this "coincidence" is merely testimony tailored to defeat suppression. Adding further

to the dubiousness of this account is Officer White's claim that he was never told by Sergeant

Kivlehan that the NYPD had received a tip about an armed man matching Mr. Forestier's

Honorable Kenneth M. Karas
United States District Judge
Southern District of New York

September 25, 2006
Page 16

**Re:     United States v. Vito Forestier**
        **05 Cr. 1280(KMK)**

description driving a black sedan. As it is inconceivable that Sergeant Kivlehan would fail to

warn a fellow officer that he would be approaching a man carrying a lethal weapon. Officer

White's testimony cannot be considered credible and we would ask the Court to keep that in

mind when considering Officer White's testimony regarding Mr. Forestier's erratic driving and

his discovery of drugs in plain view in Mr. Forestier's car.

Miranda Warning

    Any incriminating statements made by Mr. Forestier after his car was approached by the

police and he was seized without probably cause should be suppressed under the exclusionary

doctrine as fruit of the poisonous tree. *Bram v. U.S.*, 168 U.S. 532 (1897); *Massiah v. U.S.*, 377

U.S. 201 (1964). Should the court find that Mr. Forestier's stop was warranted, his statements

should still be suppressed because he was not properly informed of his rights as required by

*Miranda v. Arizona*, 384 U.S. 436 (1966). According to the testimony of Officer White,

Sergeant Kivlehan and Lieutenant McMahon, Mr. Forestier was Mirandized twice, once orally

when he was first brought to the police station around 8 pm, and once in writing roughly five

hours later. A review of the record, however, reveals the testimony of the officers to be

incomplete and conflicting with regard to who gave the warning, what time the warning occurred

and whether the first warning was given at all. The testimony of Mr. Forestier, corroborated by

Ms. Lavayen, indicates that there was no oral Miranda warning and the written statement was

made under coercion.

Honorable Kenneth M. Karas                          September 25, 2006
United States District Judge                        Page 17
Southern District of New York

Re:   **United States v. Vito Forestier**
      **05 Cr. 1280(KMK)**

On June 6, 2006, Officer White testified that after Mr. Forestier was brought to the station house, he was initially "debriefed" and given an oral Miranda warning. (Tr. 1 at 67). Officer White did not specify who administered the warning, and admitted that he had left the debriefing session shortly after it had begun. *Id.* After being recalled to court on July 5, 2005, Officer White later testified that he had heard Lieutenant McMahon advise Mr. Forestier at the initial debriefing that Mr. Forestier did not have to speak to the police and that anything he said could be used against him. (Tr. 2 at 13-14 and 33). Lieutenant McMahon testified that he did not administer any Miranda warning during the initial debriefing session, expressly contradicting Officer White's testimony (Tr. 3 at 82).

As Officer White's testimony is the only evidence that this initial Miranda warning took place, and the warning did not include the right to council, the record is insufficient to show Mr. Forestier was properly given his rights when first brought to the station house. Although none of the officers allege Mr. Forestier made any incriminating statements between the first alleged Miranda warning and the written statement he made four hours later, (*see* Government at hearing and C on this submission), we would ask the court to consider the contradictory testimony of Officer White and Lieutenant McMahon in assessing their credibility regarding the probably cause behind Mr. Forestier's search and seizure.

Approximately five hours after his arrest, Mr. Forestier initialed and signed a written statement, which listed his Miranda rights and read, "[n]ow that I have advised you of your

Honorable Kenneth M. Karas                          September 25, 2006
United States District Judge                          Page 18
Southern District of New York

Re:    **United States v. Vito Forestier**
       **05 Cr. 1280(KMK)**

rights, are you willing to answer questions" and was dated "11/7/06 at 00:55." (Government

Exhibit 2 at hearing and 3 to this submission). According to the Officer White and Sergeant

Kivlehan, Officer White read from the sheet, and had Mr. Forestier initial the waiver and sign a

written statement in the presence of Lieutenant McMahon and Sergeant Kivlehan. (Tr. 1 at 25

and 66, Tr. 3 at 63-66). According to Officer White, this took place four or five hours after Mr.

Forestier's arrest (Tr. 1 at 67-68), which is consistent with the time written on the sheet: 00:55.

(Government Exhibit 1). However, according to Sergeant Kivlehan it took place within half an

hour of Mr. Forestier's arrest. (Tr. 3 at 63-64).    Lieutenant McMahon, who was supposedly

controlling the interrogation, could not even remember if he gave Mr. Forestier the Miranda

warning or whether it was another Officer White. (Tr. 3 at 98). No clear chain of events or time

line can be establishing from the officers' confused or contradictory testimony. We submit to the

court that the testimony of the officers is not credible, and ask the court to consider Mr. Forestier

and Ms. Lavayen's very different version of events.

       Mr. Forestier's testified that after being brought to the police station and strip searched,

he was installed in an interrogation room. (Tr. 1 at 153). He was then questioned without

Miranda warnings, and admitted the drugs and gun recovered from the car were his. (Tr. 1 at

153-156). Mr. Forestier further testified that he was repeatedly threatened by Officer White that

his child would be sent to child services and Ms. Lavayen imprisoned if he did not provide the

police with a written statement admitting guilt. (Tr. 1 at 122). Eventually, Mr. Forestier

Honorable Kenneth M. Karas
United States District Judge
Southern District of New York

September 25, 2006
Page 19

Re:    **United States v. Vito Forestier**
       **05 Cr. 1280(KMK)**

acquiesced and agreed to give a written statement when told he could see his girlfriend. Ms. Lavayen was brought into the room where she told Mr. Forestier she and the child would not be released until he made a written statement. (Tr. 1 at 126). The statement was signed in front of several officers with Ms. Lavayen in the room. (Tr. 1 at 125). Mr. Forestier expressly testified that without the threats to his family, he would never have signed the statement. (Tr. 1 at 124). Ms. Lavayen's testimony strongly corroborates Mr. Forestier's. She testified that after she was brought to the station, she was told repeatedly by Officer White that she and her child would not be released until Mr. Forestier made a written statement taking responsibility for the drugs and gun (Tr. 1 at 191-193). She also testified that she was eventually led into a room with several officers and Mr. Forestier, where she urged him to make a written statement so she and their daughter could be released. (Tr. 1 at 193-194). Ms. Lavayen testified that Mr. Forestier agreed to make the written statement and wrote was he was directed to by the officers in the room. (Tr. 1 at 194). Only then was a Ms. Lavayen's sister allowed to come pick up their child, at 2:00 am in the morning. (Tr 1. At 190-191).

The Government must prove a valid Miranda waiver by showing that the waiver was uncoerced and the defendant understood both the nature of the right being waived and the

---

[1] Although Officer White testified that the child was picked up within an hour of arriving at the station, (Tr. 1 at 23), Lieutenant McMahon testified that Mr. Forestier saw Ms. Lavayen and their child *after* Mr. Forestier signed the written statement, (Tr. 3 at 91), which, according to Government Exhibit 1, was 1:00 am. This is just another of many examples of testimony by Officer White that appears tailored to defeat suppression.

Honorable Kenneth M. Karas                          September 25, 2006
United States District Judge                         Page 20
Southern District of New York

**Re:    United States v. Vito Forestier**
        **05 Cr. 1280(KMK)**

consequences of the waiver. _Moran v. Burbine_, 475 U.S. 412, 421 (1986). Coercion is weighed

by the totality of the circumstances of the statements, which include the presence of an attorney

for the suspect and any "promises of leniency or other benefits" from law enforcement officers.

_Green v. Scully_, 850 F.2d 894, 902 (2nd Cir. 1988). As Mr. Forestier gave credible testimony,

supported by the testimony of Ms. Lavayen, that he was threatened that his wife would be

imprisoned and his child taken away if he did not make a written statement, the confession

should be considered coerced and therefore not admissible as evidence. _See e.g., Lynumn v._

_Illinois_, 372 U.S. 528 (1963) (confession inadmissible when made only after police told

defendant that state financial aid for her children would be cut off and her children would be

taken from her); _People v. Keene_, 148 A.D.2d 977, 539 N.Y.S.2d 214 (4th Dept. 1989)

(confession inadmissible after police officer promised defendant that his wife would not go to jail

if he confessed) ; _People v. Helstrom_, 50 A.D.2d 685, 375 N.Y.S.2d 189 (3d Dept 1975)

(incriminating statements properly suppressed when defendant's statements were in response to

police threats that they would arrest the woman the defendant was living with).

Mr. Forestier is also alleged to have made spontaneous incriminating statements in the

back of the patrol car after his arrest without being given Miranda warnings. Any such

statements were the direct consequence of Mr. Forestier's illegal search and seizure, and thus

should be suppressed under the exclusionary doctrine as fruit of the poisonous tree. _Massiah v._

_U.S._, 377 U.S. 201 (1964).

Honorable Kenneth M. Karas                           September 25, 2006
United States District Judge                          Page 21
Southern District of New York

**Re:** **United States v. Vito Forestier**
       **05 Cr. 1280(KMK)**

Respectfully,

Roland Thau and
Peter N. Tsapatsaris,
Staff Attorneys
Tel.: (212) 417-8733 and 8713

cc: Brendan R. McGuire, Esq., AUSA
     By fax 637-2527 and by hand

Valentine Ave,
Bronx, NY

NITO ~~FORRESTEIR~~ FORESTIER

DEFENDANT'S
EXHIBIT
A

- Opened wax paper of heroin in door handle.
- 40 decks of heroin in underwear
- → 3 decks in cell phone case w/ phone

on floor by pedals, 9mm

11/6/05 @ 7:15 pm   [→ 4 yr old girl in car]

→ pulled over at hydrant, noticed window tinted. dark
→ Asked if everything ok; seemed nervous, talked fast + erratic.
→ Noticed heroin on door.
→ step from car
→ frisk
→ wife in car
→ in back of car & he's agitated. → arrested but no Miranda
   → "Money in car"; "Maybe gun in car"
→ Told sargent → brought lieutant
→ Lieutant + Sargent
   → bag behind driver's seat → $19,000 in cash + handgun.
                                        in $100s
   → 9mm single round on driver's side floor

→ Took car back to ~~scene~~ precinct to inventory → took cell phone out of car.
   → bullet-proof vest → found by Lieutant + Sargent
↳ Took Δ to precinct
   → Officer Carpenter → searched + recovered 40 decks.
- After process arrest, $ checked cell phone + found additional 3 in car.
→ "Got gun from SI"; "Heroin from SI"
→ "Wife not involved" → would not do written statement.
→ Written statement saying wife involved w/ drugs + gun.
   → She was released that morning (11/7/05)

3501-S

05 MAG 1882

DEFENDANT'S
EXHIBIT
B

Approved:  _B. C. McG_____

          BRENDAN R. MCGUIRE
          Assistant United States Attorney

Before:     HONORABLE DEBRA C. FREEMAN
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - x
                     :

UNITED STATES OF AMERICA    :    <u>Complaint</u>
                     :
      -v.-          :    Violations of
                     :    21 U.S.C. §§ 812, 841(a)(1),
                     :    841(b)(1)(C) & 18 U.S.C. §
                     :    924(c)(1)(A)(i)
VITO FORESTIER,         :
                     :
                     :    COUNTY OF OFFENSE:
          Defendant.   :    BRONX
                     :
- - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

      MICHAEL RODRIGUEZ, being duly sworn, deposes and says
that he is a detective with the New York City Police Department
("NYPD"), and charges as follows:

<u>COUNT ONE</u>

      On or about November 6, 2005 in the Southern District
of New York, VITO FORESTIER, the defendant, unlawfully,
intentionally, and knowingly, did distribute and possess with
intent to distribute a controlled substance, to wit, mixtures and
substances containing a detectable amount of heroin.

     (Title 21, United States Code, Sections 812, 841(a)(1),
              841(b)(1)(C).)

<u>COUNT TWO</u>

      On or about November 6, 2005, in the Southern District
of New York, VITO FORRESTIER, the defendant, unlawfully,
willfully, and knowingly, during and in relation to a drug
trafficking crime for which he may be prosecuted in a court of
the United States, namely the offense charged in Count One of
this Complaint, did use and carry a firearm, and in furtherance
of such crime, did possess a firearm, to wit, a loaded Smith and
Wesson 9 millimeter semi-automatic handgun, which the defendant

possessed in the vicinity of East 180th Street and Valentine Avenue in the Bronx, New York.

(Title 18, United States Code, Section 924(c)(1)(A)(i).)

The bases for my knowledge and the foregoing charges are, in part, as follows:

1.    I am a detective with the NYPD, and I have been involved in the investigation of the above-described offenses.  I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my review of pertinent documents, and from my conversations with fellow law enforcement agents.  Because this affidavit is submitted for the limited purpose of demonstrating probable cause, I have not included details of every aspect of the investigation.  Where I relate statements, conversations, and actions of others, those statements, conversations, and actions are related in substance and in part, except where otherwise indicated.

2.    On or about November 7, 2005, I spoke with a NYPD Police Officer ("Officer 1").  He told me, in substance and in part, among other things:

a.    On or about November 6, 2005, while on regular patrol in his patrol car with another police officer ("Officer 2"), he noticed a vehicle with dark tinted windows pull over quickly and come to a stop in front of a fire hydrant near the intersection of East 180th Street and Valentine Avenue in the Bronx, New York.

b.    Officer 1 pulled up next to the vehicle and the male driver of the vehicle, later identified as VITO FORESTIER, the defendant, rolled down the front driver's side window.  Officer 2 asked FORESTIER about the dark tinted windows in the vehicle.  FORESTIER then became agitated and began to speak quickly and erratically.

c.    Officer 1 then exited the patrol car and approached the vehicle, standing at the open front driver's side window.  He noticed there was a female passenger sitting in the front passenger seat of the car and a young girl sitting in the back seat of the car.

d.    Officer 1 then asked the driver for his driver's license and registration.  While the driver was giving him his license, Officer 1 noticed through the open window an

2

unwrapped white glassine containing a white powdery substance on
the driver's door console.

           e.    The driver handed his driver's license to
Officer 1 and it contained the name VITO FORESTIER and a
photograph that resembled the driver.

           f.    Officer 1 then asked VITO FORESTIER, the
defendant, to exit the vehicle and placed him under arrest.  He
put FORESTIER in the back of his patrol car while he checked his
license and registration.  At that time, FORESTIER began speaking
quickly and erratically and stated in substance and in part,
among other things that:

                i.    There is money in the car.

                ii.    There may be a gun in the car because
usually when I bring the money out I bring my gun out.

           g.    After Officer 1 informed Officer 2 of these
statements, Officer 2 and a third police officer who had arrived
on the scene ("Officer 3") searched the vehicle of VITO
FORESTIER, the defendant.  Officer 2 told Officer 1 that, among
the items recovered from FORESTIER's vehicle, were:

                i.    A 9 millimeter handgun.

                ii.    A single round of 9 millimeter
ammunition.

                iii.  190 $100 bills totaling $19,000 in cash.

           h.    After being told of the search, Officer 1
drove VITO FORESTIER, the defendant, to the precinct house.  At
the precinct house, a fourth police officer ("Officer 4")
searched FORESTIER.  Following the search, Officer 4 told Officer
1 that he recovered forty glassines of a white powdery substance
from FORESTIER's underwear.

           i.    Officers 2 and 3 drove the vehicle of VITO
FORESTIER, the defendant, back to the precinct house to conduct
an inventory search.  After the search, they told Officer 1 that
the items recovered from the inventory search included:

                i.    A bullet-proof vest.

                ii.    4 cell phones.

            j.    Subsequently, Officer 2 asked VITO FORESTIER,
the defendant, about the items recovered.  In response, FORESTIER
stated, in substance and part, among other things:

                i.    I got the gun from Staten Island.

                ii.   I got the heroin from Staten Island.

            k.    After being advised of his _Miranda_ rights by
Officer 1, VITO FORESTIER, the defendant, agreed to make a
written statement.  In the written statement, he stated in
substance and in part, among other things that:

                i.    Everything in the car was mine,
including the drugs and the gun.

                ii.   $5,000 of the $19,000 in cash was mine.

                iii.  $14,000 of the $19,000 belonged to the
woman who was found in the car with him.

            l.    Later that day, Officers 2 and 3 gave Officer
1 the four cell phones recovered from VITO FORESTIER's vehicle.
When Officer 1 removed one of the cell phones from its case, he
found 3 glassines of a white powdery substance in the case along
with the cell phone.

            3.    I have observed the forty glassines of the white
powdery substance recovered from the underwear of VITO FORESTIER,
the defendant, and the three glassines of the white powdery
substance recovered from the cell phone case found in his
vehicle.  Based on my training and experience, and given the fact
that it was packaged in glassines, I believe that the white
powdery substance is heroin.

                                    4

WHEREFORE, the deponent prays that VITO FORRESTEIR, the defendant, be imprisoned, or bailed, as the case may be.

Detective MICHAEL RODRIGUEZ
New York City Police Department

Sworn to before me this
7th day of November, 2005

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK
              DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
                       OF NEW YORK

DATE: 11/07/05    TIME: 0045    LOCATION: 046 PCT

SUBJECT: Vito Forestier    D.O.B. 8/16/76    PHONE#

ADDRESS: 143 Nicholes Ave Staten Island

**DEFENDANT'S EXHIBIT C**

. ou Have the right to remain silent and refuse to answer questions.
Do you understand question #1?    Subject replied: _VF_ Yes

2. Anything you do say may be used against you in a court of law.
Do you understand question #2?    Subject replied: _VF_ Yes

3. You have the right to consult an attorney before speaking to the police
and have an attorney present during any questioning now or in the future. Yes
Do you understand question #3?    Subject replied: _VF_

4. If you can not afford an attorney, one will be provided for you without
cost.    Yes
Do you understand question #4?    Subject replied: _VF_

5. If you do not have an attorney available, you have the right to remain
silent, until you have had an oppertunity to consult with one.    Yes
Do you understand question #5?    Subject replied: _VF_

6. Now that I have advised you of your rights, are you willing to answer    Yes
questions?    Subject replied: _VF_

GIVEN BY: _Joseph White_    SUBJECT SIGNATURE: _Vito Forestier_

THE SUBJECT MADE THE FOLLOWING STATEMENT ON _11/7/05_ AT _0055_

every Thing in car was mine the
Gun + Druss was mine she was
Inacuce of These Thangs in car the
money was hurs 15 Thousand dollars of
it 5$ was mine _VF_ its not what it
looks _VF_ like nobody was selling drugs
of guns or anything like that the
Police offices were not makins me write
this ?

_ COMPLETED: 0100_    SUBJECT SIGNATURE: _Vito Forestier_

DATE COMPLETED: 11/07/05    DETECTIVE SIGNATURE: _Joseph White_

PAGE___OF___

3501-N