# Federal Defenders
## OF NEW YORK, INC.

52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

*Leonard F. Joy*
*Executive Director*

*Southern District of New York*
*John J. Byrnes*
*Attorney-in-Charge*

July 11, 2007

**ECF filed and by hand**

Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

RE:   United States v. Vito Forestier
      05 Cr. 1280 (KMK)

Your Honor:

    We reply to the government's July 6, 2007, sentencing memorandum received by us July 9th. While the Probation Department recommends a custodial sentence totaling 70 months (10 months on Count I and 60 months mandatory consecutive on Count II), the government argues that the appropriate United States Sentencing guidelines range is 138 to 157 months. The government's eave of sentence exorbitant submission should be rejected in toto, partly because it belatedly and significantly disputes the probation department's calculations but more substantively because it urges meritless arguments. We propose to critique the government's arguments now succinctly as the lack of time forces us to address a last minute 12-page presentation and request permission to supplement orally at sentencing time, July 13th.

    The government's subject headings are followed here.

**Obstruction of justice – alleged perjury in suppression affidavit, hearing and trial.**

    The government urges a two-level upward adjustment on the ground that the defendant willfully committed perjury three times concerning whether or not a glassine envelope containing white powder was in plain view in the driver's left armrest of his car when the police approached him and further at trial in denying that he intended to distribute any of the heroin seized from him in his car following his arrest.

    As an initial matter, the court should be troubled by the notion that a defendant who is already facing a significant mandatory sentence should in addition suffer a more severe one simply because he elects to testify in his own defense that he intended to use himself all the baggies of heroin in his possession simply because the jury concluded that the admittedly addicted defendant intended to distribute an undetermined number (theoretically, possibly only

Honorable Kenneth M. Karas
United States District Judge
Southern District of New York

July 11, 2007
Page 2

RE:   United States v. Vito Forestier
      05 Cr. 1280 (KMK)

one) of the these baggies. An enhanced sentence in the scenario present here has too great a potential to chill a defendant's constitutional right to testify about his relevant state of mind.

With respect to whether the defendant willfully lied about the alleged baggie in the armrest, we note that in its December 6, 2006, ruling on the motion to suppress, the court did not categorically find that Mr. Forestier had lied but, rather, that Officer White's testimony had been found more credible on the issue. The court noted (Tr. 5-6) that the defendant was clearly addicted, had just completed a five hour trip from Staten Island (the marathon-delaying trip) and, in commenting on the defense counsel's argument:

"I don't think that's a bad argument, and I've considered that, but I think it assumes a level of the clear-headed thinking that Mr. Forestier I don't think was doing that evening given the condition he was in." (At 6) (Emphasis added).

At page 11 of the same (Dec. 6, 2006) decision, the court says "As I said, I gave this a lot of thought. I'm not saying that it's a question that's free of doubt, but given the burden here, I find that the government has met its burden."

This language by the court suggests that because of Forestier's fatigue and drug-induced condition, he may not have remembered or been aware that he had left a partly consumed drug baggie in the armrest of his car. If that is what the court meant when using that language and it certainly did not express an opinion that the defendant had deliberately lied on this point it would be inappropriate to anchor an obstruction of justice enhancement on him if he had more likely than not misstated a fact because of his own diminished capacity to recall and describe it accurately.

An enhancement for being less than truthful in this particular case would be particularly disturbing since some of the police testimony at the suppression hearing was patently suspicious, to put it charitably. Three police officers testified: Officer White, Sargent Kivlehan and Lieutenant McMahon.

In its motion to suppress decision (Tr. 3) the court noted:

"I did have some concerns, and I expressed those during argument about Sergeant Kivlehan and his reflexive lack of memory on some key issues, but I don't find that that is enough to overcome what I find to be credible testimony from Officer White."

In fact, Sargent Kivlehan's testimony was utterly incredible and hence quite probably perjurious. This argument is not to be misunderstood as an attempt to reopen the motion to suppress or to be arguing

Honorable Kenneth M. Karas  
United States District Judge  
Southern District of New York

July 11, 2007  
Page 3

RE:  **United States v. Vito Forestier**  
     **05 Cr. 1280 (KMK)**

again that there was no baggie in the arrest. When, over the government's objections, the court ordered the disclosure of what the police knew about the defendant before his arrest, the suppression hearing was reopened for an exploration of what the police knew or believed about the defendant before the police approached him and what were the policemen's mentions vis-à-vis him if they found him.

Lieutenant McMahon had instructed Sargent Kivlehan to find a bald or shaven-headed Vito driving a dark Honda or a Acura with a woman and child aboard who was known to carry a firearm and was about to take delivery of narcotics in the vicinity of the grand Concourse and 183rd St. Sargent Kivlehan testified that he drove to that location with Officers White and Carter aboard, intending to find the suspect and drove in the vicinity of that intersection without finding the suspect, eventually reached Valentine Avenue and coincidently found himself driving right behind the car which he would eventually and coincidently learn was being driven by the very Vito whom his lieutenant had ordered him to find.

Kivlehan had some difficulty explaining what he intended to do if he located the suspect whom his lieutenant had ordered him to find. He testified that he would want for the suspect to be involved in a drug transaction and presumably arrest him. If he didn't observe him doing such a thing, he would follow him until the border of his own precinct. Fortunately, the driver of the car right in front of his own on Valentine Avenue began driving erratically, and that is when Kivlehan abandoned the assignment given to him by his lieutenant to find the armed drug dealer and chose instead to make a traffic stop of the car which, lo and behold, was coincidently being driven by the very man whose pursuit he had just abandoned! Sargent Kivlehan is either the luckiest member of the New York City police force or an out and out perjurer.

Surely the government should appreciate the irony inherent in its tolerance of and particularly its reliance on Kivlehan's fantasies as compared to its censorious view of Mr. Forestier's testimony.

The government argues that, presumably, after preparing with experienced counsel, the defendant testified perjuriously once again at trial that there had been no baggie in the arrest of his car. For starters, whether or not there was such a baggie there was utterly irrelevant, hence immaterial at trial, unlike in the motion to suppress. Moreover, the baggie in the arrest topic was not covered in Mr. Forestier's direct examination. It is the government which broached that subject for the first time at trial by asking irrelevant questions at page 563, lines 15-7 and goading the defendant into finally saying

Q: You didn't know they found found [sic] an open deck of heroin in your arrest?  
A: That is what they say they found. It was never there

But this exchange did not take place until after the cross examining prosecutor had twice asked the defendant whether he remembered that there was a glassine in the arrest and the defendant had testified that he had no such memory (Trial Tr. 563, lines 7-11). It is axiomatic of course that denying memory of a certain detail is not the same thing as asserting positively that one thing or another is a fact or is not. The prosecutor asking these questions knew that Mr. Forestier had asserted in his affidavit in

Honorable Kenneth M. Karas
United States District Judge
Southern District of New York

July 11, 2007
Page 4

RE:  **United States v. Vito Forestier**
     **05 Cr. 1280 (KMK)**

support of the motion suppress and at the suppression hearing that there had been no baggie in the armrest and that the court had found, in deciding the motion, that there had in fact been such a baggie there. Defense counsel knew it also and stayed away from that topic on his direct examination of the defendant partly to avoid having his client repeat at trial what the court had not believed but also because it was irrelevant. In this context, the government goaded the defendant into a "perjury trap" which should have been objected to on relevancy grounds. Either the defendant was going to repeat what he had said at the suppression hearing and thereby reassert a fact rejected by the court there or he was going to contradict what he had said earlier in which case one or his other version had to be false and, by the government's lights, perjurious.

Accordingly, on the basis of the above to be supplemented orally if need be at time of sentence the court should reject the government's argument that it apply a two-level upward adjustment for instruction of justice.

### Relevant Conduct for Count 1

The government concedes that, before the court may enhance a sentence for relevant conduct not proven or admitted by the defendant, the government has the burden of proving that such conduct was committed and that this burden can be met only by competent evidence. The government sets forth what an informant "Kenny" is said to have reported to the authorities. That, of course, is not evidence. On that basis alone, the court should reject the government's invitation to ratchet up the Guidelines range from 10 to 16 months on Count 1 to 78 to 97 months. This most extraordinary position is all the more meritless when we recall that the informant "Kenny" loomed prominently and frequently at trial although the government did not see fit to call him as a witness but used his information in an *ex parte* "good-faith basis" presentation to justify some 70 inflammatory and accusatory cross examining questions posed to the defendant who each time denied the serious accusations contained in the questions.

Accordingly, the government having failed to even come close to meeting its burden of proof on this issue, the court should deny its application.

### History and Characteristics of Defendant.

Notwithstanding the government's mocking tone when referring to our description of Mr. Forestier as "basically a first offender", that is precisely what he is but the government now recycles its repeated futile efforts at trial to present two allegedly serious prior bad acts, first as Fed.R.Evid. 404(b) evidence, and when that failed, under the guise of impeachment.

It is generally the case in "history and characteristics of defendants" issues that when it comes to prior criminal conduct, it be shown by convictions, defendant's admissions or evidence. Here, the government argues that the defendant should be penalized, or at least not receive a non-guidelines

Honorable Kenneth M. Karas
United States District Judge
Southern District of New York

July 11, 2007
Page 5

RE:     **United States v. Vito Forestier**
        **05 Cr. 1280 (KMK)**

sentence on Count 1 because of two alleged criminal bad acts, neither one of which resulted in a conviction and one of which didn't even reach court. Once again, as on the Relevant Conduct issue, the government prefers to proceed by its own hearsay proffer rather than with evidence which it sought to present at trial but, in the case of the first alleged act not permitted by the court and, with respect to the second, abandoned by the government itself after unsuccessfully attempting to bluff defense counsel into stipulating to what a police witness would have said (Trial Tr. 635-6).

Accordingly, the defendant respectfully submits that the government's requested upward adjustments and enhancements are meritless, unduly censorious, that a sentence of 70 months suggested by us is reasonable and sufficient when considering the totality of circumstances of this case.

Respectfully,

Roland Thau
Staff Attorney
Tel.: (212) 417-8733

cc:     Brendan R. McGuire, Esq.,
        Michael Q. English, Esq
        Assistant United States Attorneys
        By fax (212) 637-2387